UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>ANNE WARREN, )<br>)<br>Defendant. ) | No. 3:24-CR-113-TAV-JEM |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Warren's Motion for Return of Seized Property [Doc. 68]. The Government filed a response [Doc. 75], and the Court held a hearing [Doc. 76]. Assistant United States Attorneys Jeremy Dykes and Anne-Marie Svolto were present on behalf of the United States and Aaron Wiley was present on behalf of Defendant Anne Warren, who was also present [*Id.*]. Following the hearing, the parties filed supplemental briefing [*Id.*; Docs. 85, 95, 102 & 113]. The Court received additional evidence and argument on May 29, 2025, with the same parties and counsel present. The matter is ripe for disposition. For the reasons set forth below, the Court **DENIES** the motion [Doc. 68].

I.      BACKGROUND

On October 16, 2024, the Grand Jury returned an Indictment against Anne Warren, Tiffany Haney and Rocky Hill Pharmacy, LLC, charging each with conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1347[1] [Doc. 3 ¶ 16]. Defendant Warren was also charged with two counts of making false statements relating to health care matters, in violation of 18 U.S.C. § 1035, and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A [*Id.* ¶¶ 47, 49].

---

[1] The body of the charge references 18 U.S.C. § 1347, while the title of Count One references 18 U.S.C. § 1349.

Defendant Haney was also charged with one count of making false statements relating to health care matters, in violation of 18 U.S.C. § 1035, and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A [*Id.* ¶¶ 47, 49]. The Indictment also alleged forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) [*Id.* ¶ 51].

Approximately two weeks later, the undersigned issued seizure warrants authorizing the seizure of various bank accounts, investment accounts, vehicles, and personal watercraft [Doc. 75 pp. 2–3]. Related to Defendant Warren, the following was seized:

### Bank Accounts

(a) All funds from Bank of Truist Bank Account Number xxxx6832, in the name of ANNE W. WARREN;

(b) All funds from Truist Bank account number xxxx4741, in the name of WARREN MANAGEMENT, LLC;

(c) All funds from Regions Bank account number xxxx9174, in the name of ANNE WHITEHEAD WARREN;

(d) All funds from Regions Bank account number xxxx5106, in the name of ANNE WHITEHEAD WARREN;

(e) All funds from Pinnacle Bank account number xxxx0757, in the name of WARREN MANAGEMENT, LLC;

(f) All funds from Pinnacle Bank account number xxxx2250, in the name of ANNE C. WARREN AND VANDEN W. WARREN CONSTRUCTION ACCT.;

(g) All funds from Pinnacle Bank account number xxxx9582, in the name of ANNE W. WARREN TAX ACCOUNT;

(h) All funds from Pinnacle Bank account number xxxx8832, in the name of VANDEN C. WARREN and ANNE W. WARREN;

. . .

### Investment Accounts

(a) All funds from Charles Schwab Brokerage investment account in the name of ANNE WARREN;

(b) All funds from Raymond James investment account in the name of ANNE WARREN; [and]

. . .

### Personal Watercraft

(a) Personal watercraft (PWC) Boat, HIN: SERV2340E121, in the name of VANDEN WARREN[.]

[*Id.*].[2]

Defendant moved for return of this property pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure [Doc. 68 p. 1]. Defendant claims that as a result of these seizures, her "accounts were debited a total of over five million dollars" [*Id.* at 1–2]. In addition, she states the Government filed a notice of *lis pendens* with respect to her residence as property subject to forfeiture, which combined with the accounts seized totals over $9.5 million seized [*Id.* at 2]. Defendant claims that the combined seizures from Defendant Warren and Defendant Haney "exceeds $12.75 million—a sum that far exceeds the $8.7 million loss to the government . . . identified in the Indictment in at least two places" [*Id.* (citing Doc. 3 ¶¶ 1 & 29)]. According to Defendant, who relies chiefly on *Luis v. United States*, 578 U.S. 5 (2016), this over-seizure is unlawful and has left her unable to afford counsel of her choice [*Id.* at 3–4].

Before the Government responded to Defendant's motion, the Grand Jury returned a Superseding Indictment, adding one count of conspiracy to commit money laundering in violation

---

[2] On November 8, 2025, the Government filed a Bill of Particulars for Forfeiture of Property, stating its intent to seek forfeiture of all of Defendant Warren's seized accounts and personal watercraft and of her unseized residence [Doc. 18 pp. 1–4].

3

of 18 U.S.C. § 1956(h) (Count Nine) and four counts of money-laundering (monetary transactions derived from specified unlawful activity) in violation of 18 U.S.C. § 1957 (Counts Ten–Thirteen) for Defendants Haney and Warren [Doc. 73 ¶¶ 54, 56]. The Superseding Indictment also contains forfeiture allegations, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1) and 28 U.S.C. § 2461 [*Id*. ¶¶ 57–61]. All of the bank accounts, investment accounts, and personal watercraft that are the subject of the seizure warrants listed above are named as properties to be forfeited in the Superseding Indictment [*Id*. ¶ 60 bank accounts (a)–(h), investment accounts (a)–(b), & personal watercraft (a)]. Additionally, Defendant Warren's residence is listed as property to be forfeited [*Id*. ¶ 60 real property (c)].[3]

The Government responded in opposition to the motion [Doc. 75]. The Government asserts that after a court authorizes pretrial seizure of property, as here, a defendant may request an evidentiary hearing, which is known as a *Monsanto* hearing, to challenge the seizure, but such a hearing is not automatically granted [*Id.* at 10]. Rather, for the court to hold a hearing, a defendant must meet the two-pronged *Jones-Farmer* test by showing "(i) that they have no assets other than those subject to seizure with which to exercise their Sixth Amendment right to counsel; and (ii) that there is a bona fide reason to believe that a court (or a grand jury) erred in finding probable cause to believe that the seized funds would be subject to forfeiture if the defendants are convicted" [*Id.* at 11 (citations omitted)]. The Government asserts that Defendant's allegations in her motion fail to meet this test and her reliance on *Luis* is misplaced [*Id.* at 14–22].

---

[3]     On May 21, 2025, the Grand Jury returned a Second Superseding Indictment [Doc. 127]. The main changes are the addition of Defendant Tina Roper, a pharmacy technician who worked at Rocky Hill Pharmacy, to the allegations in Count One and the change in the amount of funds obtained through the alleged conspiracy to commit health care fraud from "$14 million" to "millions of dollars" [*See id*. ¶¶ 1, 5].

On March 11, 2025, the Court held a hearing on Defendant's motion [Doc. 76]. At the hearing, Defendant testified. In summary, Defendant testified that she has been a pharmacist, first for Wal-Mart for fifteen years, until 2014. At the time she worked for Wal-Mart, she bought stock through her paycheck. She then worked as a pharmacist for approximately four years at a small, independent pharmacy in Knoxville, Tennessee. Defendant introduced an exhibit showing all the Wal-Mart stock Defendant owned as of the date of the document, February 4, 2022 [Exh. 1]. Shortly thereafter, she rolled her Wal-Mart stock into an individual account within her Raymond James investment portfolio. She testified that account was seized as a part of this case.

Defendant stated that she established Rocky Hill Pharmacy ("RHP") in 2018 and owns fifty percent of the pharmacy along with Defendant Haney, who owns the other fifty percent. While RHP is still an ongoing business, she testified that it is currently "maintaining." According to Defendant, before the Indictment the business was making $500,000 in gross sales per month, and at the time of her testimony it was making an average of $120,000 in gross sales per month. She testified that news stories and social media posts have negatively impacted the business. Defendant testified that her income as an owner is now significantly less. Currently, she takes a "W-2 salary" in the amount of $8,000 every two weeks. Prior to 2025, she also drew a management fee but has not done so this calendar year. She testified that since January 1, 2025, she has earned approximately $30,000, in part due to the $25,000 she withdrew in case the business's operating accounts were seized. She testified that those accounts have not been seized and that as a part owner, she must have an agreement to take out funds. Related to the business, she testified that it has a mix of customers who pay with cash and who use insurance to pay for medication. Several insurance companies, she said, have reached out seeking to cancel contracts with the pharmacy,

and she explained that the pharmacy's business lawyer is working to prevent that from happening. She testified that one insurance company has "dropped" the pharmacy.

Defendant testified that her husband currently owns his own business. He makes $8,000 gross each month and does not take income draws. He is the sole owner of his business.

According to Defendant's testimony, she purchased a home in 2004 after graduation from pharmacy school. She paid for that home, and then, in 2014, she purchased a new home with her husband, whom she married in 2009. She used the first home as a rental property for approximately eight years before selling it in September 2022 for $380,000 [Exh. 2]. She put the proceeds of the sale into her Raymond James investment portfolio.

Defendant testified that at the time she and her husband bought their home in 2014, her husband worked for a local cellular service in business development. He paid the mortgage for their home through the income that he earned at the time, which she testified was sufficient to cover the payments. Her income was used for other ancillary expenses. Defendant and her husband built the home for approximately $550,000 and added a pool in 2020 for $100,000. She paid for the pool with income from both her and her husband. They sold the home in September 2024 for $1.85 million [Exh. 3]. Defendant said $1.4 million of the proceeds from the sale of that home were deposited into her Raymond James account. She testified that account was seized. She has no mortgage on her current home, which is valued at approximately $4.5 million. Defendant testified that she cannot take a mortgage on the home because it is subject to a *lis pendens*.

Defendant testified about her net worth [Exh. 4]. She and her husband have $35,000 in a personal checking account, and they have two cars together valued at $27,000. They each have a 401k retirement account that was not seized. Her husband's account is valued at $1,114,000 and her account is valued at $673,000. She acknowledged that there would be tax consequences if she

6

Case 3:24-cr-00113-TAV-JEM   Document 150   Filed 06/03/25   Page 6 of 20
PageID #: 2023

cashed out the retirement accounts. As for liabilities, her home insurance is $8,000, and she owes $13,500 in property taxes each year. At the time of her testimony, she anticipated a tax liability of $250,000, and she testified that she does not have the ability to pay that liability. Defendant further testified that she must pay for utilities and expenses related to her children, and that she does not have expensive jewelry or other items to sell for any amount of money. She also testified that she does not take many trips.

In total, Defendant testified that the Government seized $9.5 million from her. She further testified that she is unable to pay for her lawyer. She stated that she established a payment schedule and has been unable to meet it, explaining that she has paid nothing toward her legal fees for the calendar year 2025.[4]

The parties also presented argument. In summary, Defendant reiterated reliance on *Luis*. In doing so, Defendant expressed that she is not contesting probable cause for the $8.7 million seized, which represented the fraud alleged in the Indictment, but the excess that was seized. Had the excess not been seized, she asserted, she would be able to pay for her counsel. And relatedly, defense counsel proffered that he could not stay on the case if she could not pay him. Defendant also asserted that the Superseding Indictment, which alleges that Defendants profited in an amount that is just over the amount seized, does not correct the wrongdoing, which is the original over-seizure of untainted funds. She pointed to the legitimate funds from her Wal-Mart stock and the sales of her homes that went into accounts that were seized. In addition, Defendant confirmed she seeks relief under Rule 41(g).

---

[4] After the hearing, Defendant filed under seal a copy of her agreement with Mr. Wiley [Exh. 5, SEALED] and provided a copy to the Government.

The Government contested Defendant's reliance on Rule 41(g) and focused on the two-part *Jones-Farmer* test outlined in its briefing, arguing that *Luis*, which deals with untainted assets, does not apply here because the seized assets are tainted. With respect to the first prong, it argued that Defendant failed to show that she cannot afford counsel. Specifically, the Government pointed to the salaries of Defendant and her husband and her 401k accounts; asserted the taxes alleged are speculative and should not be considered; and claimed Defendant could sell her home or business. As to the second prong, the Government acknowledged that certain conduct was contemplated in the affidavit supporting the seizure warrants but not in the original Indictment, but nonetheless, two probable cause findings supported the seizures: the Indictment and the seizure warrants. It also asserted that it was not limited to seizing assets tied to the overt acts stated in the Indictment.

At the hearing, Defendant informed the Court that she did not have a copy of the affidavit supporting the seizure warrants. The Government asked to unseal the affidavit for the limited purpose of providing it to defense counsel, and the Court granted that motion. A copy of the affidavit was made an exhibit [Exh. 6]. The Court also ordered supplemental briefing [Doc. 76].

In Defendant's supplement, Defendant continues to assert reliance on *Luis*, arguing that the Government's *Jones-Farmer* cases predate *Luis* and that other cases are from outside of the Sixth Circuit [Doc. 85 pp. 1–2]. Defendant also asserts, nonetheless, that based upon her testimony she "is in substantial financial need of attorney's fees" [*Id.* at 2]. As for the second prong, she claims that the "affidavit supporting the application for the seizure warrants, while establishing probable cause for seizure generally, is sweepingly conclusory and bereft in differentiating between tainted and untainted assets that found their way to the financial institutions . . ." [*Id.* at 3]. She specifically highlights that her Wal-Mart stock was acquired before Rocky Hill Pharmacy was formed and the proceeds from that stock were deposited into a separate Raymond James investment sub-account

[*Id.* at 4]. She also highlights the sale of her home in 2022, which yielded approximately $375,000 in equity that was deposited into the Raymond James investment account [*Id.*]. In addition, Defendant points out that the affidavit ignores that Rocky Hill Pharmacy engaged in legitimate prescription servicing [*Id.*]. Finally, with respect to the Government's reliance on 18 U.S.C. § 1957, Defendant argues that the Department of Justice Manual precludes prosecution for "receipt and deposit" transactions in the absence of certain exceptions not applicable here and that the Superseding Indictment does not show any tracing [*Id.* at 6–7]. Defendant argues she has met her burden under the second *Jones-Farmer* prong and now the burden shifts to the Government to demonstrate by "a reasonable tracing method" that the seized funds are tainted [*Id.* at 7].

The Government then filed its response [Doc. 95]. It reasserts its reliance on the *Jones-Farmer* test and argues that Defendant failed to make the requisite showings for a hearing [*Id.* at 1–3].[5] As to the first prong of the test, the Government asserts that Defendant has over $1.5 million in assets, over $250,000 in annual household income, and untapped business assets that she could use to pay an attorney [*Id.* at 3, 7]. As to the second, the Government asserts that the Grand Jury found probable cause to believe the assets are subject to forfeiture, and it "'gets the final word'" [*Id.* at 3 (quoting *Kaley v. United States*, 571 U.S. 320, 341 (2014))]. Specifically, the Government asserts that the proceeds of the fraud include property that the person would not have but for the fraud even if a portion of the business is legitimate [*id.* at 11–12 (citing cases)], and that the calculation of forfeiture amounts is not an "exact science" [*id.* at 9]. Regarding *Luis*, the Government argues that the case "comes into play" only if a defendant can show that the United States is holding the assets as substitute property (which the Government contends the Superseding

---

[5] The Government also concludes that Defendant has abandoned her argument that she is entitled to the return of seized funds under Federal Rule of Criminal Procedure 41(g) because she failed to brief that issue despite being asked to do so by the Court [Doc. 95 p. 1 n.1].

9

Indictment shows that it is not) and that courts continue to follow the *Jones-Farmer* test post-*Luis* [*Id*. at 6]. Finally, the Government argues that Defendant does not have standing to assert claims on behalf of her husband [*Id.* at 12].

In Defendant's reply, Defendant reasserts reliance on Rule 41(g) of the Federal Rules of Criminal Procedure [Doc. 102 pp. 1–3]. She claims that the rule "is the applicable vehicle to seek return of her property seized by seizure warrants" [*Id.* at 1]. She argues that the Government failed to present any controlling authority that Defendant cannot use the rule and distinguishes the cases upon which the Government relies [*Id.* at 2]. As an alternative, Defendant submits that the Court has inherent power to review its seizure orders under the All Writs Act, 28 U.S.C. § 1651(a) [*Id.* at 3]. Turning to the reason she merits relief under Rule 41(g), Defendant argues that neither the Superseding Indictment, nor the seizure warrant affidavit, sets forth an amount traceable to the underlying fraud [*Id.* at 3–4].[6] She points to a recent Sixth Circuit decision, *United States v. Erker*, 129 F.4th 966 (6th Cir. 2025), and argues that it requires that the Government do more than "point to a withdrawal from a commingled account to prove the existence of 'criminally derived proceeds'" [*Id.* at 5]. Finally, Defendant relies upon Tennessee property law related to marital assets and asserts that "if Tennessee law recognizes her interest in the property sufficient to claim it in a dissolution, surely she has ample standing to seek return of that property in a Rule 41 *in rem* proceeding" [*Id.* at 7].

The Government filed a sur-reply to address the application of Rule 41(g) of the Federal Rules of Criminal Procedure and the cited Tennessee law on marital property because of Defendant's assertion that she did not abandon her argument that Rule 41(g) applies [Doc. 113

---

[6] Defendant Warren also argues that Defendant Haney's challenge to the probable cause for the issuance of the seizure warrants, which she seeks to join, further undercuts the Government's position that all seized assets were funded with illegitimate proceeds [Doc. 102 pp. 4–5].

pp. 1, 4]. According to the Government, "Defendant's reliance on Rule 41(g) is misplaced" because the Rule provides an equitable remedy only appropriate if the property owner has no adequate legal remedy [*Id.* at 2]. The Government maintains that after a forfeiture proceeding, whether administrative, civil, or criminal, has commenced, Rule 41(g) may not be used to seek the return of property [*Id.*]. And it states, that is the case even though Defendant filed her motion before the return of the Superseding Indictment [*Id.* at 3]. Instead, the Government contends that Rule 41(g) no longer applies, and Defendant's "only option for contesting the pending forfeiture action is to contest the forfeiture in her criminal case" [*Id.* (citations omitted)]. As for Defendant's reliance on Tennessee Code Annotated § 36-4-121, the Government asserts that the statute provides for what is considered "marital property," which is "for the sole purpose of dividing assets upon divorce or legal separation and for no other purpose" [*Id.* at 5 (citing Tenn. Code. Ann. § 36-4-121(b)(2)(E)) (emphasis omitted)]. Moreover, it asserts that federal courts in other states "have refused to find that a right to equitable distribution of marital property confers ownership independent of a divorce proceeding" [*Id.* (citation omitted)].

The Court heard additional argument on the motion from both parties, along with an update on Defendant's financial situation on May 29, 2025 [Doc. 144].[7] Related to her financial situation, Defense counsel proffered that Defendant is no longer practicing prescription medication or disbursement and is currently unemployed. The Department of Labor has excluded Defendant from participation in their programs. He said that Rocky Hill Pharmacy "closed down" on May 9, 2025, because it could not sustain business; but he noted the LLC was still active. According to defense counsel, there was money in the business, and it was used to pay employees. As for the

---

[7] The Court also conducted a sealed hearing where it inquired about specific aspects of Mr. Wiley's defense agreement.

assets and liabilities submitted at the March hearing, defense counsel represented that all those figures [*see* Exh. 4] were still correct as of the date of the hearing, with the exception of Defendant's tax liability. Defendant had paid some toward that liability. She obtained an extension to pay her taxes and still owes more than $150,000. He represented that he had not been paid anything since December 2024.

In response, the Government asserted that Defendant could pay her attorney. It introduced evidence showing that Rocky Hill Pharmacy had changed ownership [Exh. 7]. According to the Government, the pharmacy is now Knox Apothecary, LLC; the contact for the pharmacy is V. C. Warren, who is believed to be Defendant's husband [*id.* p. 1]; and the pharmacist is also the same one who worked for Rocky Hill Pharmacy [*id.* at 3]. The Government therefore asserted that the business changed in name only, and that it is inaccurate to assert that the business had dissolved and is not making money. In reply, defense counsel proffered that it was unlikely the business would be successful in light of current circumstances.

## II.     ANALYSIS

Defendant seeks return of seized funds pursuant to Federal Rule of Criminal Procedure 41(g) and her Sixth Amendment right to counsel. For the reasons discussed below, Defendant cannot proceed under Rule 41(g) and fails to satisfy the *Jones-Jamieson* test to warrant a probable cause or *Monsanto* hearing.

### A.     Rule 41(g)

Defendant moves under Rule 41(g) of the Federal Rules of Criminal Procedure for the return of her seized funds. Rule 41(g) provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). But Rule 41(g) does not apply to property that is subject to federal

forfeiture. *United States v. Sims*, 376 F.3d 705, 708 (7th Cir. 2004) ("The proper office of a Rule 41(g), motion is, before any forfeiture proceedings have been initiated, or before any criminal charges have been filed, to seek the return of property seized without probable cause, or property held an unreasonable length of time without the institution of proceedings that would justify the seizure and retention of the property."); *see also United States v. Search of Music City Mktg., Inc.*, 212 F.3d 920, 923 (6th Cir. 2000) (permitting a motion for return of property under Rule 41(e), predecessor to Rule 41(g), under the court's "equitable jurisdiction" when no criminal indictment or proceeding was pending against the movant); *United States v. Tahir*, No. 15-20351, 2016 WL 641342, at *6 (E.D. Mich. Feb. 18, 2016) ("[W]hen there is either a civil or criminal forfeiture procedure under way, a Rule 41(g) motion is not appropriate." (citing *Sims* and footnote omitted)); *In re Search of Citizens Bank Checking Acct. of Drogueria Villa, Inc.*, No. 3:11-MC-07, 2012 WL 3764058, at *1 (E.D. Tenn. Aug. 1, 2012) (citing *Sims*), *report & recommendation adopted*, 2012 WL 3764424 (E.D. Tenn. Aug. 29, 2012). *Accord Brown v. United States*, 692 F.3d 550, 552 (6th Cir. 2012) (explaining that after civil forfeiture proceedings commence, equitable relief under Rule 41(g) is no longer available); *Shaw v. United States*, 891 F.2d 602, 603–04 (6th Cir. 1989) (affirming dismissal of motion for return of property under Rule 41(e), predecessor to Rule 41(g), after the government filed civil forfeiture proceedings).

At the time Defendant filed her motion, the Government had filed an Indictment including a forfeiture provision [Doc. 3]. Specifically, under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), the Government charged the defendants with forfeiture of "any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense" of conspiracy to commit health care fraud [*Id.* ¶ 51]. In total, the Government alleged fraud in the amount of $8,778,736.10 [*Id.* ¶ 1]. The Government had also

13

provided notice of specific property subject to forfeiture in a Bill of Particulars [Doc. 18]. Because the Government had commenced criminal forfeiture proceedings in the amount of $8,778,736.10, Rule 41(g) is not an appropriate avenue for return of that property.

Yet, Defendant argues that the Government seized at least $4 million more than the amount alleged in the Indictment. At the time of Defendant's motion, the Government had not filed the Superseding Indictment but did so two days before filing its response to Defendant's motion [*See* Docs. 73 & 75]. The Superseding Indictment also includes a forfeiture provision [Doc. 73 ¶¶ 57–61]. In addition to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), the Government seeks forfeiture under 18 U.S.C. § 982(a)(1) [*Id.* ¶¶ 57, 59]. Section 982(a)(1) provides for forfeiture, upon conviction of a "violation of section 1956, 1957, or 1960 [of Title 18] . . . any property, real or personal, involved in such offense, or any property traceable to such property." 18 U.S.C. § 982(a)(1). Defendants are charged in the Superseding Indictment with conspiracy to commit money laundering in violation of § 1956(h) and money laundering in violation of § 1957 [Doc. 73 ¶¶ 53, 56].

The Government contends Defendant cannot circumvent the Grand Jury's forfeiture allegations by filing a motion under Rule 41(g) [Doc. 113 p. 3]. It asserts the Court no longer has jurisdiction to consider the motion [*Id.*]. The Court agrees. *See Music City Mktg.*, 212 F.3d at 923 (explaining that a court has jurisdiction under Rule 41(e), the predecessor to Rule 41(g), when there are no criminal proceedings pending); *see also Shaw*, 891 F.2d at 604 (finding district court did not retain jurisdiction over a Rule 41(g) motion after government filed civil forfeiture proceeding and properly gave notice to defendant).

Even assuming Rule 41(g) could be used under these circumstances to seek return of assets, the Court would decline to exercise its equity jurisdiction here. "Civil equitable jurisdiction is

14

Case 3:24-cr-00113-TAV-JEM    Document 150    Filed 06/03/25    Page 14 of 20
PageID #: 2031

discretionary; a court should exercise it with 'caution and restraint.'" *United States v. Kazkaz*, No. 23-20022, 2023 WL 4237758, at *9 (E.D. Mich. June 28, 2023) (citation omitted). Courts consider four factors in making the determination:

> (1) whether the Government displayed a callous disregard for the constitutional rights of the movant; (2) whether the movant has an individual interest in and need for the property [they] want [] returned; (3) whether the movant would be irreparably injured by denying return of the property; and (4) whether the movant has an adequate remedy at law for the redress of [their] grievance.

*Id.* (citation omitted and alterations in original). If, however, "an adequate remedy at law exists, the fourth factor is dispositive: a movant is not entitled to equitable relief, and a court must decline to exercise jurisdiction." *Id.* (citing *Shaw*, 891 F.2d at 203). Here, an adequate remedy at law exists because, by returning the Superseding Indictment, the Grand Jury has now found probable cause to believe that the seized assets are subject to forfeiture. *See Purbeck v. Wilkinson*, No. 1:21-cv-47, 2021 WL 1553810, at *1 n.2 (D. Idaho Apr. 20, 2021) (finding adequate remedy at law existed in criminal proceedings initiated after the filing of a motion under Rule 41(g)). The Court would therefore decline to exercise jurisdiction to entertain Defendant's request under Rule 41(g).

### B. Sixth Amendment Claim

That leaves[8] Defendant's argument that she seeks return of the seized property so that she can afford counsel to represent her. Under the Sixth Amendment, a defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "[A]n element of

---

[8] Defendant asserts that "[s]hould [R]ule 41(g) not apply, . . . the Court's inherent power to review its previous orders for propriety, namely the seizure warrants in this case, also stems from the provisions of the All Writs Act[, 28 U.S.C. § 1651(a)" [Doc. 102 p. 3]. Defendant provides no authority or argument for this proposition, so the Court declines to entertain it. And the Court would decline to exercise such "inherent power" for the same reason it will not exercise equitable jurisdiction: Defendant has an adequate legal remedy.

15

Case 3:24-cr-00113-TAV-JEM    Document 150    Filed 06/03/25    Page 15 of 20
PageID #: 2032

this right is the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2008) (citations omitted). As the Supreme Court has explained, "the Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire . . . ." *Caplin & Dysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989). But a "defendant may not insist on representation by an attorney he cannot afford." *Id.* (citation omitted). "[P]retrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment." *Luis v. United States*, 578 U.S. 5, 10 (2016).

"A defendant may challenge the propriety of the restraint on the ground that he is prevented from paying an attorney with his untainted assets." *United States v. Dortch*, No. 2:17-cr-20155-SHM-11, 2018 WL 1960777, at *3 (W.D. Tenn. Apr. 26, 2018). "If the defendant makes a sufficient challenge, due process entitles him to a post-deprivation, pretrial hearing, where the government has the burden to establish that there is probable cause 'to believe that the assets in dispute are traceable or otherwise sufficiently related to the crime charged in the indictment.'" *Id.* (quoting *Kaley v. United States*, 571 U.S. 320, 324 (2014) (footnote omitted)). While the Sixth Circuit has not adopted a framework for how a defendant may make "a sufficient challenge," it has expressed "no quarrel" with a district court applying a two-part test set forth in *United States v. Jones*, 160 F.3d 641 (10th Cir. 1998). *United States v. Jamieson*, 427 F.3d 394, 407 (6th Cir. 2005). That test (the "*Jones-Jamieson* test") provides that a defendant is entitled to a hearing "only when the defendant can (1) demonstrate to the court's satisfaction that she has no assets and (2) make a prima facie showing of a bona fide reason to believe the grand jury [or issuing judge] erred in determining that the restrained assets constitute or are derived, directly or indirectly, from gross proceeds traceable to the commission of the offense." *Id.* (quoting *Jones*,

16

160 F.3d at 646–47) (quotation marks omitted). If the defendant can do so, "the burden then shifts to the prosecution to establish, by probable cause at an adversarial hearing, that the restrained assets are traceable to the underlying offense." *Id.* (citing *Jones*, 160 F.3d at 647). Ultimately, a defendant "may not insist on representation by an attorney he cannot afford" if property was properly seized. *Wheat v. United States*, 486 U.S. 153, 159 (1988). "A robbery suspect, for example, has no Sixth Amendment right to use funds he has stolen from a bank to retain an attorney to defend him if he is apprehended." *Caplin & Drysdale*, 491 U.S. at 626.

Defendant challenges the application of this test, relying primarily on *Luis v. United States*, 578 U.S. 5 (2016), in support of her argument. As stated above, in *Luis*, the Supreme Court held that "the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment." 578 U.S. at 10. *Luis* followed a series of cases addressing pretrial restraint of assets. In 1989, the Supreme Court decided *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617 (1989), and *United States v. Monsanto*, 491 U.S. 600 (1989). The former involved "assets adjudged forfeitable," 491 U.S. at 632, and the latter involved "assets not yet judged forfeitable," 491 U.S. at 613. With respect to "assets not yet judged forfeitable," as here, the Supreme Court announced: "Permitting a defendant to use assets for his private purposes that . . . will become the property of the United States if a conviction occurs cannot be sanctioned." *Monsanto*, 491 U.S. at 613. If there is a finding of probable cause to believe the assets are forfeitable, then assets in a defendant's possession may be restrained. *Id.* at 615. In 2014, the Supreme Court reaffirmed this holding. *Kaley*, 571 U.S. at 328–30 (2014). The Supreme Court also noted without opining that "lower courts have generally provided a hearing to any indicted defendant seeking to lift an asset restraint to pay for a lawyer." 571 U.S. at 324 & n.3. Then, in 2016, the Supreme Court explained in *Luis* that "legitimate, untainted assets" may not be restrained

17

if they are needed to retain counsel. 578 U.S. at 10 (addressing a pretrial "freeze" on substitute assets).

Despite Defendant's argument that *Luis* changed the landscape, lower courts have consistently found that *Luis* did not change the analytical framework for deciding whether a defendant is entitled to a hearing to determine whether an asset seizure should be lifted to allow for payment of legal fees. *United States v. Wood*, No. 3:15-CR-14-GFVT-REW, 2016 WL 8131240, at *6 (E.D. Ky. Oct. 3, 2016) ("Nothing about *Kaley* or *Luis* proports to (or does) overrule or invalidate the *Jones-Jamieson* hearing preconditions or burden regime." (footnote collecting cases omitted)).[9] The Court therefore applies the two-part test with which the Sixth Circuit has "no quarrel": to proceed, Defendant must "(1) demonstrate to the court's satisfaction that she has no assets and (2) make a prima facie showing of a bona fide reason to believe the grand jury erred in determining that the restrained assets constitute or are derived, directly or indirectly, from gross proceeds traceable to the commission of the offense." *Jamieson*, 427 F.3d at 406 (quoting *Jones*, 160 F.3d at 646–67) (cleaned up).

---

[9] *See also United States v. Lacey*, No. CR-18-00422-001-PHX-DJH, 2021 WL 5882638, at *8 (D. Ariz. Dec. 10, 2021) (disagreeing with the defendants' argument that *Luis* "eliminated the requirement that a defendant establish that they need seized assets to pay for counsel before a *Monsanto* hearing"); *United States v. Stokes*, No. 1:14-CR-290-TWT-JKL-1, 2017 WL 5986231, at *4–5 (N.D. Ga. Oct. 23, 2017) ("*Luis* does not speak to what showing a defendant must make because there was no dispute that the frozen assets were untainted. *Luis*, therefore, does not change the general rule that to be entitled to a hearing to determine whether seized assets are tainted, the defendant must make a prima facie showing of substantial financial need for those assets."), *report & recommendation adopted by* 2017 WL 5971986 (N.D. Ga. Dec. 1, 2017); *United States v. Hernandez-Gonzalez*, No. 16-20669-CR-SCOLA/TORRES, 2017 WL 2954676, at *5–7 (S.D. Fla. June 26, 2017) ("To the extent the Defendant relies on *Luis* for the proposition that the Government is mandated to return any frozen assets because of the Sixth Amendment's right to counsel, Defendant's argument misses the mark. There is nothing in *Luis* that imposes that type of per se requirement."), *report & recommendation adopted by* 2017 WL 3446815 (S.D. Fla. Aug. 10, 2017).

Defendant fails at the first prong. The first prong "involves a flexible and pragmatic inquiry into the Defendant's overall financial picture[,]" and the Court examines whether Defendant has sufficient unseized assets to pay counsel. *Wood*, 2016 WL 8131240, at *6 (citing cases). Defendant and her husband have approximately $1.8 million in two 401k retirement accounts. Defendant argues that if she were to liquidate her 401k accounts, she would be subject to tax consequences and a penalty for early withdrawal, leaving her with "about fifty cents on the dollar" [Doc. 85 p. 3 n.2], or approximately $900,000. Upon review of Defendant's agreement with Mr. Wiley, and Mr. Wiley's representations about his fees during the sealed hearing on May 29, 2025, the Court finds that Defendant can afford to pay Mr. Wiley with these unseized assets or other assets from business ventures of Defendant's husband, the value of which was not disclosed to the Court. *See United States v. Real Property Known as 223 Spring Water Lane*, No. 6:18-CV-315, 2021 WL 9439845, at *7 (E.D. Ky. Sept. 28, 2021) ("Courts have denied post-restraint hearings when a defendant failed to provide proof of net worth." (citation omitted)). Defendant also has the benefit of her husband's income to provide for her family. *See Jones*, 160 F.3d at 647 (explaining that the first prong requires a defendant to "demonstrate to the court's satisfaction that she has no assets, other than those restrained, with which to retain private counsel and provide for herself and her family" (citation omitted)). While proceeding with Mr. Wiley may require Defendant and her husband to liquidate their retirement accounts at a penalty, based upon the record before the Court, Defendant's choice of counsel is not threatened by requiring her to compensate him with unseized assets. *See Jamieson*, 427 F.3d at 407 (explaining that "due process should be honored when a defendant's Sixth Amendment right to counsel of choice is threatened by virtue of the restraint of his funds").

Accordingly, the Court finds Defendant fails to meet the first prong of the *Jones-Jamieson* test because she has not shown she has insufficient assets with which to pay her chosen counsel. *See United States v. Koher*, No. 3:18-cr-73, 2018 WL 6319895, at *1 (S.D. Ohio Dec. 3, 2018) (denying motion to release assets where the "there has been no evidence, through testimony, documentation, or otherwise, to establish" the assets were needed to hire counsel). Because a defendant must satisfy both prongs to have a *Monsanto* hearing, the Court need not address the second prong.

### III. CONCLUSION

Defendant cannot proceed under Rule 41(g) and fails to satisfy the first prong of the *Jones-Jamieson* test to warrant a probable cause or *Monsanto* hearing. Accordingly, the Court **DENIES** Defendant Warren's Motion for Return of Seized Property [**Doc. 68**].

**IT IS SO ORDERED.**

ENTER:

_____
Jill E. McCook
United States Magistrate Judge